UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RICHARD MALLARD,<br><br>                        Plaintiff,<br>     v.<br><br>BATTELLE ENERGY ALLIANCE, LLC,<br><br>                    Defendants. | Case No. 4:12-cv-00587-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

**INTRODUCTION**

Before the Court is defendant's Motion to Dismiss Counts Three and Four and Portions of Counts One, Two, and Five of Plaintiff's Second Amended Complaint (Dkt. 17).  The motion is fully briefed and the Court has determined that oral argument would not significantly assist the decisional process. The Court will therefore resolve the motion without a hearing.  As explained below, the Court will grant the motion, in part, and deny the motion in part.

The Court will grant Battelle's motion to dismiss plaintiff's wage discrimination claims (Counts 3 and 4).  As for the remaining claims, the Court will deny the motion to

dismiss any portion of Mallard's claims under the Idaho Human Rights Act. The Court will, however, grant the motion to the extent Mallard seeks to recover under the ADA for events occurring before February 12, 2009.

## BACKGROUND

Plaintiff Richard Mallard worked in the fire department at the Idaho National Laboratory for approximately 25 years. In early 2005, defendant Battelle Energy Alliance, LLC began operating part of the lab. At that time, Mallard became a Battelle employee.

Roughly three years before Battelle began operating the lab, Mallard contracted meningitis. He had very high fevers and was hospitalized for several days. After recovering, Mallard returned to work, but he noticed a few difficulties with some tasks that he used to be able to easily perform, like calculating math in his head. Mallard saw a doctor, who concluded that although the meningitis and high fevers had caused some impairments, Mallard could still perform his job.

Mallard attempted to discuss the impairments with his manager, David Stonhill, but Stonhill refused to listen; instead he placed "unreasonable restrictions" on Mallard and, over the years, increased Mallard's workload so significantly that it became impossible for him to complete his work.

In mid to late 2008, Mallard complained to Battelle management, and Mallard and Stonhill began working with Battelle's Employee Assistance Program. Stonhill, however, eventually stopped attending.

On February 2, 2009, Mallard was summoned to Battelle's Human Resources office, where he was told Battelle suspected he had a mental illness.  Human Resources personnel then took Mallard's access badge and required him to undergo a limited physical assessment by the on-site physician, Dr. Johns.  Dr. Johns told Mallard that Battelle was requiring him to get a neuropsychiatric evaluation from a doctor Battelle had selected, Dr. Theresa Ross.  The same day, Battelle placed Mallard on unpaid administrative leave and required him to fill out short-term disability paperwork.

Mallard met with Dr. Ross twice, once on March 31, 2009 and again on April 2, 2009.  Dr. Ross opined that Mallard was capable of performing his job, although she suggested a few accommodations.  For example, she recommended that Mallard multi-task less and use written reminders to perform complex tasks more efficiently.

Despite Dr. Ross' opinion, Battelle refused to allow Mallard to return to work. When Mallard asked about returning to work, Battelle insisted that he obtain a "Return to Work" letter from his personal physician.  Of course, Mallard's personal physician had never said he could not work in the first place.  Also, while he was on this forced unpaid leave, Battelle sent a letter to Mallard informing him that he might be terminated without further notice because he had accumulated so much time off without pay.

Meanwhile, back at the lab, in Mallard's absence, some Battelle employees were apparently telling Mallard's co-workers that he had psychological problems.  One of Mallard's co-workers said he had heard that Mallard's cheese had slipped off his cracker. Mallard believes this is a euphemism for mental illness.

In mid-July, roughly five months after he was placed on administrative leave, Battelle's lawyer contacted Mallard's lawyer to arrange for his return to work.  At this time, Battelle's lawyer also "initiated a meeting to see if the matter could be resolved pursuant to BEA's [Battelle] mandatory alternative dispute resolution ('ADR') process." *Second Am. Compl.*, Dkt. 16, ¶ 39.

The meeting was scheduled for July 28, 2008, "but had to be cancelled by BEA.  It was rescheduled for September 23, 2009." *Id.* ¶ 40.  In the meantime, on July 21, 2008, Mallard returned to work.  The same day he returned to work, Battelle asked Mallard to report to HR to discuss his job performance.  HR required Mallard to sign a Performance Improvement Plan, that included a description of what Mallard describes as "supposed 'specific performance criteria' that were not being met." *Id.* ¶ 38.  This plan did not mention any of the accommodations Dr. Ross had recommended.  Battelle also told Mallard that he must "continue to meet with [Battelle's] Employee Assistance Program." *Id.* ¶ 37.

On September 23, 2009, Mallard and his lawyer attended the scheduled meeting in an attempt to resolve the requested accommodations, back pay, and the performance improvement plan.  Mallard understood this meeting was meant to comply with Battelle's mandatory ADR program.  Battelle refused Mallard's requests although, at the end of the meeting, Battelle's counsel allegedly told Mallard she would "get back to Mallard's counsel regarding his request for backpay, but asserted he should pursue short-term disability benefits." *Id.* ¶ 42.  On November 23, 2009,  Mallard's counsel received

correspondence from Battelle's lawyer indicating Battelle would not pay Mallard for his unpaid leave.  *Id.* ¶ 43.

On April 19, 2010,[1] Mallard filed separate charges of discrimination with the Idaho Human Rights Commission and the Equal Employment Opportunity Commission. Afterward, in September 2011, Mallard took an early retirement, though he had hoped to finish his career at Battelle.  He received right-to-sue letters from the Idaho Human Rights Commission and the Equal Employment Opportunity Commission (EEOC) in September 2012.  He filed this action in November 2012.

In his second amended complaint, Mallard alleges four claims:  (1) violation of the Americans with Disabilities Act (the ADA) (2) violation of the Idaho Human Rights Act; (3) wage discrimination under the ADA; (4) wage discrimination under the Idaho Human Rights Act; and (5) retaliation for engaging in activity under the Idaho Human Rights Act and the ADA.

---

[1] The amended complaint continues to allege that this charge was filed on April 15, 2010.  *See Second Am. Compl.*, Dkt. 16, ¶ 54.  The charge itself, however, shows that it was signed on April 15 and "received"  by the Idaho Human Rights Commission on April 19, 2010.  *See* Dkt. 6.  The Court will use April 19, 2010 as the filing date, as it appears plaintiff now concedes this was the proper date.  *See, e.g., Casperson Aff.*, Dkt. 12, ¶ 16 ("My office filed a charge of discrimination on Mallard's behalf on or about April 19, 2010.").  *See generally Marder v. Lopez,* 450 F.3d 445, 448 (9th Cir. 2006) (on 12(b)(6) motion, court may consider documents "on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion").  Additionally, the Idaho Administrative Code provides that the date the complaint is received at the Commission's offices – as noted on the complaint – will be the date of filing. Idaho Admin. Code r. 45.01.01.300.06.b.

## THE LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Supreme Court identified two "working principles" that underlie *Twombly* in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). First, the court need not accept as true, legal conclusions that are couched as factual allegations; Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*. at 678-79. Second, to survive a motion to dismiss, a complaint must state a plausible claim for relief. *Id*. at 679.

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556. "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Providing too much in the complaint may also be fatal to a plaintiff. Dismissal may be appropriate when the plaintiff has included sufficient allegations disclosing some absolute defense or bar to recovery. *See Weisbuch v. County of L.A.*, 119 F.3d 778, 783, n.1 (9th Cir.1997) (stating that "[i]f the pleadings establish facts compelling a decision one way, that is as good as if depositions and other ... evidence on summary judgment establishes the identical facts").

A dismissal without leave to amend is improper unless it is beyond doubt that the complaint "could not be saved by any amendment." *Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009) (issued two months after *Iqbal*). The Ninth Circuit has held that "in dismissals for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv., Inc.,* 911 F.2d 242, 247 (9th Cir. 1990). The issue is not whether plaintiff will prevail but whether he "is entitled to offer evidence to support the claims." *Diaz v. Int'l Longshore & Warehouse Union*, 474 F.3d 1202, 1205 (9th Cir. 2007) (citations omitted).

## ANALYSIS

### 1.  Mallard's Discrimination and Retaliation Claims (Counts 1, 2, and 5)

The Court will first address Mallard's discrimination and retaliation claims under the ADA and the Idaho Human Rights Act. Battelle contends that major portions of these claims are time barred.

#### A.  The Applicable Statutes of Limitation

Mallard's ADA claims are subject to a 300-day[2] limitations period. *See* 42 U.S.C. § 2000e(5)(e)(1). His Idaho Human Rights Act claims are subject to a one-year limitations period. *See* Idaho Code §§ 67-5907(1), 67-5908(2).

---

[2] The statutory provision's 300-day limit, rather than the 180-day limit, applies here because Mallard pursued a claim before the Idaho Human Rights Commission. 42 U.S.C. § 2000e–5(e)(1).

Mallard alleges that Battelle violated both the ADA and the Idaho Human Rights Act by taking several, discrete adverse employment actions, including (1) placing Mallard on unpaid administrative leave on February 2, 2009; (2) requiring him to undergo a physical exam on February 2, 2009; and (3) requiring him to undergo a psychological assessment on March 31 and April 2, 2009; and (4) threatening to terminate him on May 27, 2009.  Separate 300-day and one-year clocks began ticking for each of these acts.  As a result, Mallard faced different deadlines to complain, as shown here:

| Date | Adverse Employment Act | 300-day deadline for ADA claims | One-year deadline for state claims |
| --- | --- | --- | --- |
| Feb. 2, 2009 | Unpaid leave; physical exam | Nov. 29, 2009 | Feb. 2, 2010 |
| Mar. 31, 2009 | Psychological assessment | Jan. 25, 2010 | Mar. 31, 2010 |
| April 2, 2009 | Psychological assessment | Jan. 27, 2010 | Apr. 2, 2010 |
| May 27, 2009 | Threatened termination | Mar. 23, 2010 | May 27, 2010 |

Mallard did not file his complaint until April 19, 2010.  As a result, this Court previously held that the only actionable event from the above list was the May 27, 2009 termination threat. *See June 6, 2013 Mem. Dec.*, Dkt. 15, at 8 (citing *Cherosky v. Henderson*, 330 F.3d 1243 (9th Cir. 2003) ("claims based on discrete acts are only timely where such acts occurred within the limitations period")).  And even then, the Court held that Mallard could complain about that threat only under the Idaho Human Rights Act. *Id.*

## B.  Equitable Tolling

In his amended complaint, Mallard alleges new facts in an attempt to save his time-barred claims under the equitable tolling doctrine.  Preliminarily, Battelle argues

that the Court already considered these facts in dismissing Mallard's claim.  But when it dismissed the last complaint, the Court limited its review to the allegations in the complaint.  So the Court is facing a different set of facts this time.

A failure to timely file may be saved by equitable tolling.  *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1176 (9th Cir. 2000), *overruled on other grounds in Socop-Gonzalez v. INS*, 272 F.3d 1176 (9th Cir. 2001).  Courts apply this doctrine sparingly.  *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990). A plaintiff's entitlement to equitable tolling depends upon (1) his diligence in pursuing his rights; and (2) the existence of some "extraordinary circumstance" that stood in his way and thereby prevented timely filing. *Holland v. Florida*, 130 S. Ct. 2549, 2562 (2010).  Thus, equitable tolling may apply "in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin*, 498 U.S. at 96.  Principles of equitable tolling do not extend to "a garden variety claim of excusable neglect." *Irwin*, 498 U.S. at 96.

Mallard's newly alleged facts relate to Battelle's mandatory ADR process.  *See Second  Am. Compl.,* Dkt. 16, ¶¶ 39-45.  The earlier complaint suggested (but did not directly state) that Mallard initiated the ADR process on September 23, 2009.  *See Am. Compl.,* Dkt. 3, ¶ 37.  It further alleged that the meeting was unsuccessful in that Battelle refused to pay Mallard for his time off without pay and refused his requested accommodations.  Thus, the earlier complaint seemed to be saying that the ADR process

began and ended during that one meeting.  The Court concluded Mallard was not entitled to equitable tolling.

The newly amended complaint alleges that the ADR process was more drawn out than the single meeting and that the delays were occasioned by Battelle.  Mallard alleges that in "mid-July," 2009 Battelle's lawyer contacted Mallard's lawyer and "initiated a meeting to see if the matter could be resolved pursuant to BEA's mandatory alternative dispute resolution ('ADR') process."  *Id.* ¶ 39.  This meeting was originally scheduled for July 28, 2009.  Battelle canceled that meeting, however, and it was rescheduled for September 23, 2009.  *Id.* ¶ 40.

As before, Mallard alleges that at the September 23, 2009 meeting, Battelle refused to give him backpay and, further, that Battelle's counsel asserted he should pursue short-term disability benefits.  *Id.* ¶¶ 41-42.  But Mallard now alleges a new fact: He says that at the end of the meeting, Battelle's counsel said "she would get back to Mallard's counsel regarding his request for back pay, . . . ."  *Id.* ¶ 42.  Battelle's counsel allegedly did not follow up until November 23, 2009, when she sent correspondence clarifying that Battelle would not pay Mallard for the time he spent on unpaid leave.  *Id.* ¶ 43.

So, based on the new allegations in the complaint, Mallard was engaged in the first step of the mediation process with Battelle from "mid-July, 2009" through November 23, 2009.  The new facts bring this case more in line with *Beck v. Battelle Energy Alliance, LLC*, No. 4:12-cv-00086-BLW, 2013 WL 587902, at *3 (D. Idaho Feb. 13, 2013).  In that

case, a Battelle employee participated in Battelle's ADR program through step two – mediation.  Mallard did not pursue the mandatory mediation, so Battelle has argued he should not be entitled to equitable tolling.  But that disregards step one of Battelle's ADR program – the "management appeal."  *See Employee Handbook,* Dkt. 12-1, at p.3, ¶ 1.  There does not appear to be any specific, formal process to initiate a management appeal, and Mallard alleges that he was engaged in this step as of mid-July, when the lawyers conferred by telephone.

So when Mallard's complaint is read with the required liberality, he has alleged facts that would allow him to prove that the limitations periods were tolled.  *See, e.g., Jablon v. Dean Witter & Co*., 614 F.2d 677, 682 (9th Cir.1993) ( "[w]hen a motion to dismiss is based on the running of the statute of limitations, it can be granted only if the assertions in the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled).  Specifically, when the alleged facts are viewed in Mallard's favor, the applicable limitations periods are tolled for 131 days, from July 15, 2009,[3] when the parties first began discussing scheduling an ADR meeting, to November 23, 2009. Taking this tolling into account, Mallard's new deadlines to pursue his ADA and Idaho Human Rights Claims are as follows:

---

[3] "Mid-July" could obviously mean a date other than July 15, 2009.  Mallard, however, did not allege a specific date so the Court was forced to choose.  But even more importantly, even if the Court said that "mid-July" was July 7, 2009 (when Mallard alleges Battelle contacted him to return to work, *Second Am. Compl.,* Dkt. 16, ¶ 37), this would not save the ADA claim to the extent it is based on February 2, 2009 acts.  That is, if the Court held that the limitations period were tolled for an additional eight days, Mallard still could only reach back to February 4, 2009.  *Judge – Obviously, this is a close call, but based on Mallard's submissions, July 7, 2009 would be the absolute earliest possible date to begin tolling the statute of limitations.  And when the complaint is read in context, it seems pretty clear that the reference to "mid-July" was to some different, later time than July 7.  See Second Am. Compl. ¶¶ 37, 39.*

**MEMORANDUM DECISION AND ORDER - 11**

| Date | Adverse Employment Act | ADA Claim (300-day deadline) | IHRA Claim (One-year deadline) |
|------|------------------------|------------------------------|--------------------------------|
| Feb. 2, 2009 | Unpaid leave; physical exam | April 9, 2010 | June 13, 2010 |
| Mar. 31, 2009 | Psychological assessment | June 5, 2010 | Aug. 9, 2010 |
| April 2, 2009 | Psychological assessment | June 7, 2010 | Aug. 11, 2010 |
| May 27, 2009 | Threatened termination | Aug. 1, 2010 | October 5, 2010 |

Under these deadlines, Mallard's ADA claim related to the February 2, 2009 acts – the unpaid leave and the physical exam – are still time-barred because he had to complain about those things by no later than April 9, 2010.  He did not complain until ten days later, on April 19, 2010.  (Looking at it differently, the April 19, 2010 date means that Mallard can reach back only to February 12, 2009.) The Court will therefore grant Battelle's motion to the extent it seeks to bar Mallard from recovering under the ADA for these acts.  Battelle's motion to dismiss portions of Mallard's ADA and Idaho Human Rights claims is denied in all other respects.

## 2.    Mallard's Wage-Discrimination Claims (Counts 3 and 4)

The Court will dismiss Mallard's wage-discrimination claims.  Mallard alleged these claims in an effort to salvage his time-barred claims.  At this point, however, the only time-barred claims are those based on Battelle's February 2, 2009 conduct:  (1) the forced, unpaid leave; and (2) the physical exam.  Mallard focuses on the unpaid leave; he argues that this constitutes wage discrimination.

Plaintiffs alleging wage discrimination enjoy a more favorable statute of

limitations because of the Lilly Ledbetter Fair Pay Act of 2009.[4]  Pub. L. No. 11-2, 123

Stat. 5. Under the Ledbetter Act, if an employer is paying the plaintiff a discriminatory

wage, the statute of limitations clock starts fresh every time the plaintiff receives a

discriminatory paycheck.  *See* 42 U.S.C. § 2000e-5(3)(A) and (B).  Before that act

passed, the clock started ticking one time only – when the employer first decided to pay

the plaintiff a discriminatory wage.  *See Ledbetter v. Goodyear Tire & Rubber Co.*, 550

U.S. 618, 624-25 (2007).

In this case, Mallard does not point to a garden-variety pay-setting decision, with

the result that every couple of weeks, he received a discriminatory paycheck.  Instead, he

argues that when Battelle placed him on leave, the company was actually making two

separate decisions:  (1) deciding to place him on leave; and (2) "consciously deciding not

to pay him while he was on leave."  He says this is wage discrimination because his non-

disabled counterparts "were not placed on unpaid leave and therefore did not suffer lost

wages."  *Second Am. Compl.*, Dkt. 16, ¶ 75.

Mallard has not pointed to any binding precedent suggesting that a wage-

discrimination claim can be defined this broadly.  Other circuits, however, have rejected

similar arguments.[5]  In  *Schuler v. PriceWaterhouseCoopers,* 595 F.3d 370, 374 (D.C.

---

[4] The Court discussed the Ledbetter Act more fully in its earlier decision.  *See June 3, 2013 Decision,* Dkt. 15, at 9-13.

[5] *See, e.g., Daniels v. United Parcel Serv., Inc.,* 701 F.3d 620, 630-31 (10th Cir. 2012) ("the Fair Pay Act did not create a 'limitations revolution for any claim somehow touching on pay'"); *Schuler v. PriceWaterhouseCoopers,* 595 F.3d 370, 374 (D.C. Cir. 2010); *Noel v. Boeing Co.,* 622 F.3d 266, 272-73 (3d Cir. 2010) ("the plain language of the . . . [Ledbetter Act] covers compensation decisions and not

Cir. 2010), for example, the D.C. Circuit rejected plaintiff's argument that his employer's failure to promote him was a "discriminatory compensation decision or other practice" within the ambit of the Ledbetter Act. *Id.* at 374-75. The court explained that "in employment law the phrase 'discrimination in compensation' means paying different wages or providing different benefits to similarly situated employees, not promoting one employee but not another to a more remunerative position." *Id.* at 374.

   The same logic applies here. When Battelle forced Mallard to take unpaid leave, it was not engaging in a "compensation decision or other practice" as that phrase is used in the Ledbetter Act. *See* 42 U.S.C. § 2000e-5(3)(A). The hallmark of a "compensation decision or other practice" under the Ledbetter Act is a confidential decision, such as a pay-setting decision. Employers typically do not tell employees how much their co-workers are earning, which makes it difficult for plaintiffs to know when they are being discriminated against. *See Ledbetter*, 550 U.S. at 645 (Ginsburg, J., dissenting). As a result, before the Ledbetter Act was passed, statutes of limitations would be ticking away when plaintiffs had no reason to suspect they were being wronged. The Ledbetter Act cures this problem by resetting the limitations-period clock every time an employee receives a discriminatory paycheck. *See* 42 U.S.C.§ 2000e-5(3)(A). But the clock does not need to be reset for discrete actions that are not cloaked in secrecy; for example, "workers know immediately when they are fired, refused employment or denied a promotion or transfer, . . . ." H.R. Rep. No. 110-237, at 6.

---

other discrete employment decisions"). *But see Coppett v. Tenn. Valley Auth.*, No. CV-11-S-4227-NE, 2012 WL 362901 (N.D. Ala. Sept. 11, 2012).

Thus, the concerns that led to the enactment of the Ledbetter Act are not present here.  When Mallard was placed on unpaid leave and forced to undergo a physical exam, it was no secret.  These were discrete, easily identifiable, fully communicated acts.  So even though the forced leave impacted his pay, Mallard has failed to allege a wage-discrimination claim within the ambit of the Ledbetter Act.  *See Noel*, 622 F.3d at 275 ("We recognize that many employment-related decisions, not simply pay-setting decisions, ultimately have some effect on compensation. But to include these myriad employment decisions within the 'other practice' language of the [Ledbetter Act] would weaken Title VII's administrative exhaustion requirement.").

Finally, Mallard's reliance on *County of Washington v. Gunther*, 452 U.S. 161 (1981) is misplaced.  The *Gunther* facts are not similar to Mallard's.  And even when *Gunther* is consulted for its broader teachings, it does not support the idea that placing an employee on unpaid administrative leave is a form of wage discrimination under the Ledbetter Act.

The plaintiffs in *Gunther* were female jailers who were paid less than male jailers. They sued under the Title VII, 42 U.S.C. § 2000e *et. seq.*  They were unable to prove that the male jailers performed "equal work," however.  Among other things, the men guarded ten times as many prisoners and the female guards did more clerical work.  The question, then, was whether sex-based wage-discrimination claims under Title VII were limited to claims of equal pay for equal work.  452 U.S. at 163.

The Court held that the Title VII was not so limited because even though the plaintiffs could not point to any male jailer who was performing "equal work," they had direct evidence of wage discrimination.  The employer had consciously decided to pay females, but not males, below-market salaries based on its own survey.  *Id.* at 166.

Mallard does not allege any parallel facts and the Court is not persuaded that the *Gunther* holding can be interpreted to encompass Mallard's wage-discrimination theory. Indeed, the *Gunther* Court itself "emphasized . . . the narrowness of the question" before it.  *Id.* The Court will therefore dismiss Mallard's wage-discrimination claims.

## ORDER

### IT IS ORDERED THAT:

1. Battelle's Motion to Dismiss (Dkt. 17) is **GRANTED in part and DENIED in part** as follows:

2. Battelle's motion to dismiss portions of Mallard's Idaho Human Rights Acts Claims (Counts 1, 2, and 5 of the Second Amended Complaint) is **DENIED.**

3. Battelle's motion to dismiss Mallard's wage-discrimination claims is **GRANTED.**  Counts 3 and 4 of the Second Amended Complaint are **DISMISSED WITHOUT LEAVE TO AMEND.**

4. Battelle's motion to dismiss portions of Plaintiff's ADA claims (Counts 1 and 5) is **GRANTED**, but only to the extent Mallard relies on acts occurring before February 12, 2009.  Thus, to the extent the claims rely on

pre-February 12, 2009 acts, they are **DISMISSED WITHOUT LEAVE**

**TO AMEND.**  Otherwise, Ballard's motion to dismiss portions of these

claims is **DENIED.**

DATED: October 31, 2013

B. Lynn Winmill
Chief Judge
United States District Court